**Anthony J. SINOPLE, Jr., Plaintiff,**

v.

**LOCAL 372 OF the SERVICE EMPLOYEES INTERNATIONAL UNION and Wieboldt Stores, Inc., a Delaware corporation, Defendants.**

No. 83 C 5691.

United States District Court, N.D. Illinois, E.D.

Dec. 9, 1983.

Patrick J. Crotty, Carroll, Hartigan & Hillery, Chicago, Ill., for plaintiff.

Bruce R. Alper/George P. Blake, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for Wieboldt Stores.

Edwin H. Benn, Asher, Pavalon, Gittler, Greenfield & Segall, Chicago, Ill., for Local 372.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Anthony J. Sinople, Jr. ("Sinople") sued Local 372 of the Service Employees International Union ("Local 372") and Wieboldt Stores, Inc. ("Wieboldt") alleging that Wieboldt breached the collective bargaining agreement among the parties by discharging Sinople without just cause, and that Local 372 breached its duty of fair representation by failing to bring Sinople's discharge to arbitration. Presently before the Court are Local 372's and Wieboldt's motions to dismiss or for summary judgment. For reasons set forth below, both defendants' motions for summary judgment are granted.

Wieboldt discharged Sinople on May 28, 1983. He claims that he received no final written warning for the alleged offense which led to his discharge.[1] Local 372 filed

---

1. While Sinople's complaint does not describe the matter for which he was discharged, the materials submitted by the parties indicate that he allegedly violated a company rule by giving a discount on a floor sample during a warehouse sale without obtaining the approval of a buyer. Sinople points to provisions in the collective bargaining agreement which require that termination for just cause be accompanied by a written warning. He claims that he received no such warning. Wieboldt points to another section of the collective bargaining agreement which states that termination for just cause is effective without prior warning in the event of "dishonesty." Sinople asserts that the violation of which he is accused does not constitute dishonesty, and that this issue is one of material fact precluding summary judgment. Our resolution of the present matter based on the exhaustion rule obviates the need to decide the merits of Sinople's claims and whether his discharge was in breach of the collective bargaining agreement.

a grievance upon Sinople's behalf, which was processed through a four-step grievance procedure set forth in the collective bargaining agreement. Step four is the final step of the grievance procedure prior to arbitration. The grievance was not settled and the union declined to take it to arbitration.

Sinople now claims that Local 372 conspired with Wieboldt to permit his discharge to stand, and that the union failed to assert the necessity of a final written warning. Local 372 points out that Sinople never filed an internal union charge complaining about the manner in which Local 372 handled his grievance prior to the institution of the present lawsuit.[2] As a result, Local 372 asserts that Sinople's failure to exhaust internal union remedies bars the present suit.

■ It is settled that employees seeking remedies for alleged breaches of collective bargaining agreements between their unions and their employers must exhaust any exclusive grievance and arbitration procedures prior to suing the unions or the employers under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Recently, the Supreme Court addressed the question of whether employ-

ees must exhaust internal union appeals procedures before filing suit under § 301. In *Clayton v. UAW*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the Court held that where an internal union appeals procedure cannot result in reactivation of an employee's grievance *or an award of the complete relief sought* in the § 301 suit, exhaustion is not required with regard to either the suit against the employer or the suit against the union. *Id.* at 685, 101 S.Ct. at 2093. The holding in *Clayton* is consistent with the Court's earlier ruling that courts have discretion to decide whether to require exhaustion of internal union procedures. *NLRB v. Marine Workers*, 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 1722 n. 8, 20 L.Ed.2d 706 (1968). Three factors must be considered in exercising this discretion:

first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095. It is to these issues we now turn, initially

**2.** The Executive Board of Local 372 decided that Sinople's grievance did not merit arbitration. Article XI of Local 372's Constitution and By-Laws provides for an internal appeal of any decision by the Executive Board:

*Section 1.* Any member shall have the right to appeal from any decision of the Executive Board to the next regular meeting of this Local Union and a majority of the members present at such regular meeting, shall be necessary to override the Executive Board's decision.

*Section 2.* If this Local Union sustains the decision of the Local Executive Board, the member shall have the right to appeal from *the decision of the meeting of this Local Union*, to the International Union by filing notice of appeal in writing with the International Secretary-Treasurer of the Service Employees International Union, within fifteen (15) days after the meeting of this Local Union.

*Section 3.* If the International Executive Board of the Service Employees International

Union sustains the ruling of this Local Union, then the accused member shall have the right to appeal from the decision of the International Executive Board to the next Convention of the Service Employees International Union, by filing notice of appeal in writing with the International Secretary-Treasurer of the Service Employees International Union, within fifteen (15) days after receipt of said decision.

*Section 4.* Subject to the provisions of applicable statutes, every member or officer of this Local Union against whom charges have been preferred and disciplinary action taken agrees, as a condition of membership or affiliation and the continuation of membership or affiliation, to exhaust all remedies provided for in the Constitution and By-Laws of the International Union and in this Constitution, and further agrees not to file or prosecute any action in any court, tribunal or other agency *until those remedies have been exhausted.*

focusing upon the second of these three factors.

### The Adequacy of Internal Union Procedures

 In the present matter, it is possible that use of the union's internal appeals procedure, *see* note 2, *supra,* could lead to reactivation of Sinople's grievance. The grievance procedure set forth in the collective bargaining agreement does not establish time limits within which Local 372 must provide notice to Wieboldt of its desire to submit a grievance to arbitration. The instant case is therefore distinguishable from *Clayton,* for the collective bargaining agreement at issue there required the union to provide the company with notice of its desire to arbitrate within fifteen days of the company's decision in the previous step of the grievance procedure. 451 U.S. at 691, 101 S.Ct. at 2096. Thus, unlike Sinople, the plaintiff in *Clayton* learned of the union's decision not to arbitrate only after it was too late to seek arbitration. As the Court in *Clayton* observed,

> if the employee obtained reactivation of his grievance through internal union procedures, the policies underlying *Republic Steel* would come into play, and the employee would be required to submit his claim to the collectively bargained dispute resolution procedures.

*Id.* at 692, 101 S.Ct. at 2097.[3] As a result, we believe that internal union procedures would be adequate to reactivate Sinople's grievance.

### The Hostility of Union Officials

 Sinople claims that pursuit of an internal union appeal would have been futile, because officials of Local 372 conspired with Wieboldt officials to discharge him. The Seventh Circuit has required a

"clear and positive showing of futility" to relieve a plaintiff from the exhaustion requirement, *Tinsley v. United Parcel Service,* 635 F.2d 1288, 1291 (7th Cir.1980), *vacated on other grounds,* 452 U.S. 934, 101 S.Ct. 3072, 69 L.Ed.2d 949 (1981), *overruled on other grounds, Rupe v. Spector Freight Systems, Inc.,* 679 F.2d 685, 690 n. 3 (7th Cir.1982). A showing of futility can be inferred from circumstances surrounding a grievance process, or through concrete evidence of personal animus. *Winter v. Local Union 639,* 569 F.2d 146, 149–50 (D.C.Cir.1978).

In support of his futility argument, Sinople has presented an affidavit which claims that his immediate supervisor told Sinople that the decision to terminate him had been a corporate decision. The affidavit adds that officials of Local 372, as an accommodation to high-ranking Wieboldt officers, decided not to proceed with arbitration of Sinople's grievance. The above standards for a showing of futility, as well as Rule 56(e)'s requirement that parties opposing summary judgment motions set forth specific facts showing that there is a genuine issue for trial, clearly indicate that Sinople has not sufficiently demonstrated facts indicating that resort to internal union appeals procedures would have been futile. As a result, the exhaustion requirement may not be avoided on this ground.

### Conclusion

Because we have decided that exhaustion is an indispensable prerequisite to a suit against Local 372,[4] a grant of summary judgment on behalf of Wieboldt due to Sinople's failure to exhaust is also appropriate. *Tinsley v. United Parcel Service,* 665 F.2d 778, 780 (7th Cir.1981). As the Court observed in that case

---

**3.** The Court also observed that reactivation of the grievance might rectify the injury of which the employee complains, namely a breach of the duty of fair representation for failure to seek arbitration. If this indeed were to occur, there would be no basis for a § 301 suit. 451 U.S. at 692, 101 S.Ct. at 2097.

**4.** Sinople also conclusorily claims that following the union's internal appeals procedures would have delayed an opportunity to receive a judicial hearing on his claim. A review of Local 372's internal appeals procedures, *see* note 2, *supra,* belies Sinople's claim on this point and will not serve to excuse his failure to exhaust such procedures.

[r]equiring that an employee exhaust all internal procedures which can provide the desired relief before commencing a suit against the employer under § 301 also comports with the policy encouraging private resolution of disputes issuing out of collective bargaining agreements. *Id.* at 780. Such a result is also in harmony with the Supreme Court's admonition against bifurcation of § 301 suits into one suit against the union and another against the company. *Clayton,* 451 U.S. at 695, 101 S.Ct. at 2098.

Accordingly, both defendants' motion for summary judgment are granted. It is so ordered.